**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2081
_____

JOSE CRISTOBAL CARDONA,
                              Appellant

v.

BRYAN A. BLEDSOE, Warden; A.W. HUDSON, Assistant Warden; B TRATE,
Captain; C/O ANDERSON; LT. FLEMING; HARREL WATTS; REGIONAL
DIRECTOR J.L. NORWOOD; HARLEY LAPPIN, Director BOP; MS. HAMILTON;
JOE KEFFER; DR. LIZARDI; MR. TOWNSEND; DARREN BRACY; GERARDO
MALDONADO; ATTORNEY GENERAL OF THE UNITED STATES; SCOTT
DODRILL; MS. BIRDSALL; BOP; DR. KARPAE; DR. MINK; JOHN DOE, SIS LT.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-11-cv-00054)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2015
Before:  FISHER, KRAUSE and VAN ANTWERPEN, Circuit Judges

(Opinion filed: January 6, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Jose Cristobal Cardona, a federal prisoner, appeals pro se from orders of the District Court granting the defendants' motion to dismiss and for summary judgment, and denying his own motions, in this action brought pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). For the reasons that follow, we will affirm.

In 2011, Cardona filed a complaint in the United States District Court for the Middle District of Pennsylvania, raising claims related to his confinement in the Special Management Unit (SMU) at USP Lewisburg. He named as defendants numerous Bureau of Prisons (BOP) employees, including several out-of-state BOP officials. The defendants filed a motion to dismiss or for summary judgment, arguing that the District Court lacked personal jurisdiction over the out-of-state BOP officials, that Cardona failed to exhaust his administrative remedies as to several of his claims, and that the undisputed facts established their right to judgment as a matter of law on the remaining exhausted claims. The District Court agreed, and entered judgment in favor of the defendants.[1] Thereafter, Cardona filed motions seeking reconsideration, the return of legal documents, and an evidentiary hearing regarding exhaustion of administrative

---

[1] The District Court also denied Cardona's motions for appointment of counsel, for class certification, to compel discovery, to permit him to prepare documents electronically, for partial summary judgment, and for an evidentiary hearing.

2

remedies.  The District Court denied those requests, and Cardona filed a timely notice of appeal.

We have jurisdiction under 28 U.S.C. § 1291.  "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review."  Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).  We may affirm on any basis supported by the record.  See Fairview Twp. v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

The District Court correctly determined that Cardona did not assert any jurisdictional facts that would support personal jurisdiction over the out-of-state BOP officials.  See Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., 983 F.2d 551, 554 (3d Cir. 1993) (stating that, where the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing that personal jurisdiction can be exercised).  Cardona claimed that the out-of-state BOP officials conspired to create an "experimental

3

program" to transfer "unwanted inmates" to the SMU. This vague allegation of a conspiracy is insufficient to demonstrate that the nonresident defendants "maintained systematic and continuous contacts with the forum state," Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008) (discussing general personal jurisdiction), or that they "purposefully directed [their] activities at a resident of the forum . . . ." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (internal quotation marks omitted) (describing requirements for establishing specific personal jurisdiction). Accordingly, the District Court properly dismissed the out-of-state BOP officials for lack of personal jurisdiction.[2] Cf. First Chicago Int'l. v. United Exchange Co., Ltd., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) (stating that "the 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction").

Several of Cardona's remaining claims were not exhausted. The Prison Litigation Reform Act ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until he has exhausted available administrative remedies. 42 U.S.C. § 1997e(a); see also Nyhuis v. Reno, 204 F.3d 65, 69 (3d Cir. 2000) (holding that the PLRA's exhaustion requirement applies to

---

[2] Cardona has not explained how he could have amended the complaint to satisfy the personal jurisdiction requirements, nor has he demonstrated that the District Court abused its discretion in not sua sponte transferring the matter to a court that could exercise personal jurisdiction over the out-of-state BOP officials. Even if jurisdiction existed, Cardona's conclusory allegations of conspiracy do not satisfy the plausibility standard of Federal Rule of Civil Procedure 12(b)(6). See Iqbal, 556 U.S. at 678.

4

Bivens claims). "Proper exhaustion of administrative remedies is necessary" to satisfy the PLRA's exhaustion requirement.[3] Woodford v. Ngo, 548 U.S. 81, 84 (2006). An untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement, thereby precluding an action in federal court. See id. at 84, 90-91; Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (holding that the PLRA's exhaustion requirement contains a procedural default component). If prison officials thwart a prisoner's ability to exhaust his administrative remedies, however, those remedies are not considered "available" within the meaning of § 1997e. See Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002).

Cardona conceded that he has not exhausted his administrative remedies with respect to all of his claims, but asserted that he was unable to do so because prison staff did not provide him with the necessary forms and failed to process his grievances. We agree with the District Court, however, that the documents Cardona submitted in support of his allegation do not raise genuine issues of material fact. Three of the documents are letters from Cardona to the warden, dated December 27, 2010, January 19, 2011, and

---

[3] In determining whether a prisoner has met the exhaustion requirement of the PLRA, we look to the prison's procedural rules. Jones v. Bock, 549 U.S. 199, 218 (2007). The BOP has established an administrative remedy procedure, pursuant to which an inmate must first present his complaints to prison staff informally. See 28 C.F.R. § 542.13. If unsuccessful, the inmate may file a formal administrative remedy request. See 28 C.F.R. § 542.14. If the inmate is unsatisfied with the response he receives from within the institution, he may file an appeal with the appropriate regional director. See 28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the response of the regional director, he may file an appeal with Central Office's general counsel. See id.

5

May 18, 2011, complaining about the inadequacy of the administrative remedy process. In particular, Cardona alleged that his prison counselor had not "filed or processed" several informal resolution forms.[4] In response, the warden explained that the documents that Cardona "gave to [his] unit team were not completed on the correct form [and] . . . [t]herefore . . . were not treated as Informal Resolution [Attempts]." Cardona does not dispute that the unprocessed grievances were submitted on incorrect forms. Prison officials did not interfere with the grievance process so as to make administrative remedies unavailable to Cardona. Rather, Cardona failed to follow proper grievance procedures. Therefore, the District Court properly held that Cardona failed to exhaust his administrative remedies with respect to several claims.

---

[4] In the letter dated May 18, 2011, Cardona claimed that his prison counselor refused to provide two informal resolution forms. Cardona supported this allegation with an affidavit from another inmate who stated that he witnessed the prison counselor deny Cardona's request for the forms. The warden's response to Cardona's letter noted that "the administrative remedy log for your unit reveals that you have received two [informal resolution forms] since arriving in J-unit on May 6, 2011. It does not appear that you are being denied access to the administrative remedy process." The District Court resolved this factual issue in the defendants' favor, noting that "the record shows that Cardona successfully utilized the administrative remedy procedure to fully exhaust some claims during the same time period that he claims USP Lewisburg staff were thwarting his efforts to follow that procedure to exhaust other claims . . . ." See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) ("hold[ing] that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury."). We conclude that this was not clear error. Id. at 271 (stating that District Court findings of fact must be accepted unless clearly erroneous).

As to those claims which Cardona did exhaust, we conclude, for substantially the reasons provided by the District Court, that they lack merit. Cardona argued that his constitutional rights had been violated in connection with his placement in the SMU.[5] Administrative segregation implicates a protectable liberty interest only if it dramatically departs from basic prison conditions. See Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003). Cardona's placement in the SMU was within "the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Indeed, transfers from lesser to more restrictive units in a prison generally do not implicate a protected liberty interest because some incursions on liberty are to be expected within a prison. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In addition, the conditions of confinement in the SMU did not impose "atypical and significant hardship[s] on [Cardona] in relation to the ordinary incidents of prison life." Id. For instance, Cardona asserted that double-celling in the SMU violated the American Correctional Association's (ACA) standards on adequate living space. But noncompliance with national standards concerning minimum space requirements does not establish a constitutional violation, Bell v. Wolfish, 441 U.S. 520, 543 n.27 (1979) (stating that "while the recommendations of these various groups [such as the ACA] may be instructive in certain cases, they simply do not establish the constitutional minima;

---

[5] We have held that Cardona's prior challenges to his placement in the SMU, via petitions filed pursuant to 28 U.S.C. § 2241, were properly dismissed for lack of jurisdiction. See Cardona v. Thompson, 551 F. App'x 630, 631 (3d Cir. 2013); Cardona v. Bledsoe, 681

rather, they establish goals recommended by the organization in question."), and Cardona presented no evidence that double celling resulted in Eighth Amendment violations. See Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (recognizing that "double celling can amount to an Eight Amendment violation if combined with other adverse conditions."). Cardona's claim regarding an allegedly unconstitutional visual search by Captain Trate fails because he did not refute Captain Trate's affidavit indicating that he had no personal involvement in the alleged search. Iqbal, 556 U.S. at 675-77 (holding that respondeat superior is not a viable theory of liability in a Bivens action). Cardona further complained about limited access to the law library, but he did not allege he suffered an "actual injury" (i.e., that he lost an opportunity to pursue a nonfrivolous claim). See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). Finally, the principles announced in Heck v. Humphrey, 512 U.S. 477, 487 (1994), and Edwards v. Balisok, 520 U.S. 641, 646-48 (1997), bar Cardona's claim that on March 15, 2010, prison employees sought to "stage [a] fight" by forcing him to occupy a cell with a rival gang member. After the fight, a disciplinary hearing officer (DHO) concluded that Cardona had committed the prohibited act of fighting, and sanctioned him to, inter alia, the loss of 27 days of good conduct time. The DHO's report, which has not been overturned, see Cardona v. Bledsoe, 2011 WL 2670002, at *4 (M.D. Pa. 2011), rejected Cardona's defense that he was forced into the cell. Therefore, if his arguments here were accepted, the result would

---

F.3d 533, 534 (3d Cir. 2012).

8

"imply the invalidity" of the disciplinary conviction and resulting loss of good conduct time. Balisok, 520 U.S. at 646.

For the foregoing reasons, we will affirm the judgment of the District Court.[6]

---

[6] We reject Cardona's challenges to the District Court denial of his motion for appointment of counsel, Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir. 1993), his motion for class certification, In re Prudential Ins. Co. of America Sales Practices Litig., 148 F.3d 283, 308-09 (3d Cir. 1998), his motion to supplement the amended complaint, Estate of Oliva v. N.J. Dep't of Law & Pub. Safety, Div. of State Police, 604 F.3d 788, 803 (3d Cir. 2010), his motion to prepare documents electronically, M.D. Pa. Local Civil Rule 5.1(i) (providing that exception to typewritten filing requirement may be made "in the case of papers filed by a pro se litigant"), his motion for the return of legal documents, Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997), and his motion for reconsideration, Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).